OPINION OF THE COURT
Edward J. Greenfield, J.
"What’s in a name?” asked Shakespeare in the immortal lines he wrote for Juliet to speak. As we now enter the digital age, the appropriate question may well be, "What’s in a number?” At least that is the issue posed in this very contentious case. The dispute involves the alleged disclosure of a telephone number and the records of calls recorded for the phone of plaintiff and his wife. Plaintiff, James L. Greenfield, purports to be a "Very Important Person” (unlike the writer, no relation, who has no pretensions to global importance), as a member of the editorial board and high in the hierarchy of the New York Times. Contending that disclosure of the telephone records of the calls made by his wife and himself would dry up his sources and threaten the physical safety of persons all over the world with whom he has confidential contacts, he attempts to envelop himself in the robes of John Peter Zenger, waging a monumental battle for the freedom of the press.
In reality, the case is not nearly as momentous as plaintiff would have us believe. We are presented here with what is basically a relatively minor, but bitter dispute arising out of the hostilities of a landlord-tenant confrontation. The happenstance that one of the parties is employed by a great newspaper does not elevate this case to a battle over constitutional principles.
There is no dispute about the circumstances giving rise to this dispute. Plaintiff and his wife, Margaret Greenfield, own rental property at 40 East 75th Street in Manhattan which is managed by Ms. Greenfield. Residential premises were leased to Andrea Lyons, but the landlord-tenant relationship did not run smoothly. Lyons filed suit for rent overcharges. Ms. Greenfield sought an injunction against the tenant removing furniture, and claims the tenant to be substantially in arrears. She brought an action for the arrears and related relief. (Greenfield v Lyons, Sup Ct, NY County, index No. 30881/92.) The tenant in that action was represented by the attorneys Schultz, Horing Wilikson & Bienstock, who have been made the defendants in this action. In May 1995, during the pendency of the landlord-tenant matter, the ASPCA received *34 an anonymous call complaining that Ms. Lyons was mistreating her puppies. Suspecting that this was a harassing spite call and that the Greenfields were the source of this spurious complaint, Lyons’ attorney issued a subpoena duces tecum to NYNEX for the telephone records of the Greenfields, for calls made from their business and residential phones for the six-day period between May 15th and 21st of 1995 to see if that was the source of the call to the ASPCA. The records were to be delivered to the subpoena clerk at 60 Centre Street on July 12, 1995, which was not a date on which any hearing in the Lyons action was scheduled. The subpoena was issued purely for discovery, but the attorney had failed to comply with the requirement of CPLR 3120 (b) that production of records or documents by a nonparty be by court order upon notice of motion to all adverse parties. (Matter of Weinberg, 129 AD2d 126 [1st Dept 1987], rearg and lv denied 132 AD2d 190; Matter of Kochovos, 140 AD2d 180 [1st Dept 1988].)
While NYNEX avers that the records were sent, whether they made it to the office of the subpoena clerk is unknown, since the clerk has no record indicating they were ever received. If they did arrive at the courthouse, no one can remember, and the defendant attorneys never got to see them. Nevertheless, plaintiff, James Greenfield, perceiving threats to his privacy, his privileges, and his journalistic integrity, commenced the instant lawsuit against Lyons’ attorneys, claiming they had been "acting in consort [sic]” to violate his constitutional rights, in violation of the Federal Anti-Wiretapping Act (47 USC § 605), violation of the Shield Law (Civil Rights Law § 79-h) and claiming emotional distress, loss of consortium, tortious interference with contract, violation of the Judiciary Law and abuse of process. Defendants thereupon moved to dismiss the complaint. Plaintiff countered with a cross motion to amend the complaint by adding a ninth cause of action for violation of the Penal Law and a request for a declaratory judgment. He also sought to subpoena NYNEX and subpoena the clerk of this court with respect to delivery of the phone records. All these motions are consolidated for disposition herewith.
This court, determined to deal with the merits or lack of them, decided to convert the motion to dismiss into a motion for summary judgment and notice of the court’s intention to do so was given in writing. At the outset, apart from the merits of the underlying action, plaintiffs motion to subpoena NYNEX and this court’s records clerk must be denied in any event. It is *35 clear that the clerk has no memory of ever receiving the phone records, and no documentation evidencing their receipt. To ask him to testify generally as to the access the general public might have to subpoenaed documents, and invite speculation that someone might have seen the records and nefariously intercepted or walked away with them would invite the wildest kind of speculation that such an unknown person might have recognized that these were not ordinary records, but those of a person with extraordinary connections, which records documented unusual telephone activity, and therefore "compromised” the plaintiffs "world-wide contacts and confidential sources for the gathering of news”, threatening their careers and physical safety. That supposes that some onlooker, if any, could glance at the numbers called and ascertain if they were to a prime minister, a rebel leader, or a dry cleaner. As to NYNEX, it can add little to support plaintiffs claims. If, as asserted, the phone record was sent to the court, its receipt and any awareness of its contents by anyone cannot be established. Speculation as to conspiracies and hypothetical injuries cannot be countenanced. This court will not indulge in acts of total uselessness and futility.
Plaintiff’s Causes of Action
Apart from a lack of any demonstrable injury, the issues raised by Mr. Greenfield in his various causes of action merit further discussion — particularly the claim that issuance by defendant attorney of the subpoena of the phone records was a criminal act which violated plaintiffs constitutional rights, threatened freedom of the press, and was a blatant invasion of his privacy.
Plaintiffs first cause of action seeks an injunction against any future violation of CPLR 3120 (b). It is clear that a motion for a third-party subpoena should have been made on notice, and defendant attorney acknowledges his procedural mistake. There is no threat of repetition. Besides seeking to enjoin defendants from violating CPLR 3120 (b) again, plaintiff requests an order compelling defendants to return to the plaintiff the telephone records in their possession and denying them the right to use them. Defendants insist they never saw the phone records in question, nor have they ever had them. Defendants assure the court they will never violate CPLR 3120 (b) again. They did not succeed in obtaining the evidence sought. Margaret Greenfield’s case was not prejudiced by defendants’ bypassing the procedural rules of discovery to see who made the calls about animal abuse to the ASPCA.
*36 Sometimes, when CPLR 3120 (b) has been violated and the violators have in fact gained an improper advantage in the litigation, courts have imposed appropriate sanctions. (See, Matter of Weinberg, 129 AD2d 126 [1st Dept 1987], rearg and lv denied 132 AD2d 190, supra; Matter of Kochovos, 140 AD2d 180 [1st Dept 1988], supra.) The imposition of sanctions is discretionary, and even if there has been an improper production of records, when no advantage ensued to the violator, the request for sanctions has been denied. (DiMarco v Sparks, 212 AD2d 965 [4th Dept 1995].) In this case, Margaret Greenfield and her attorney sought to sanction defendants in the landlord-tenant case. Justice Richard Lowe, III, denied their motion. Justice Lowe’s judicious attempt to quell the Green-fields’ agitation over a nonevent failed, and this court is now faced with Mr. Greenfield’s request to enjoin an act not threatened.
An injunction is an extraordinary remedy, issuance of which rests upon the sound discretion of the court. It is not to be used to punish past wrongdoing, but as protection for the future. (Nann v Raimist, 255 NY 307, 315 [1931].) The court is satisfied that there is no realistic danger that defendants will violate CPLR 3120 (b) again. Absent any pending threat of such a violation or of a course of conduct making such a recurrence likely, the issuance of an injunction would be meaningless. An injunction will not issue to restrain a fait accompli or a fortiori a fait non accompli. (Matter of Doe v Roe, 158 AD2d 759 [3d Dept 1990]; Town of Oyster Bay v New York Tel. Co., 75 AD2d 598 [2d Dept 1980].)
 Plaintiffs second cause of action seeks damages of up to $10,000 for each telephone number disclosed in violation of 47 USC § 605, the Anti-Wiretapping Act, to be enhanced by an additional $100,000 for each violation due to the "wrongful, unprincipled and covert” methods purportedly used by the defendants in attempting to secure the phone records. The relevant portion of 47 USC § 605 (a) prohibits persons receiving, transmitting, or assisting in receiving or transmitting telephone communications from divulging the substance or contents thereof except through authorized channels of communication. This proscription targets investigators who use wiretaps as well as the phone companies who "assist” in intercepting, receiving or transmitting telephone communications. Toll and billing records such as those subpoenaed in this case are not protected from disclosure by this law. They do not reveal the contents of any phone conversation, but are *37 considered ordinary business records which all subscribers know are being made. Their production is not an interception. Courts have rejected a literal application of the language of the statute as contrary to the congressional intent that the statute should apply only to the substance of the communications. (See, United States v Covello, 410 F2d 536, 542 [2d Cir], cert denied 396 US 879 [1969]; United States v Cerone, 452 F2d 274, 289 [7th Cir 1971]; United States v Barnard, 490 F2d 907, 913-914 [9th Cir], cert denied 416 US 959 [1974].) Nor are such records protected from disclosure because of any expectation of privacy by the Fourth Amendment of the Constitution of the United States. When one knowingly exposes his activities, i.e., the existence of his long distance calls to the phone company, he surrenders the protection of the Fourth Amendment with respect to those activities. (Reporters Comm. for Freedom of Press v American Tel. & Tel. Co., 593 F2d 1030, 1042-1046 [DC Cir], cert denied 440 US 949 [1979] [Reporters Comm.]; United States v Baxter, 492 F2d 150, 165-168 [9th Cir], cert dismissed 414 US 801, cert denied 416 US 940 [1974].) There is no expectation of privacy as to toll records and no violation of 47 USC § 605 or of the constitutional safeguards.
Plaintiffs third cause of action seeks $10,000,000 compensatory and unspecified punitive damages for violation of Civil Rights Law § 79-h, the First Amendment of the Constitution of the United States and article I, § 8 of the Constitution of the State of New York. This claim is based on the violation of plaintiffs rights to freedom of the press and his journalistic privilege. Section 79-h of the Civil Rights Law shields a journalist from contempt proceedings as to court-ordered disclosure of unpublished news or confidential sources.
In a case challenging AT&T’s policy of divulging, under subpoena, reporters’ toll and billing records to police investigators without providing the reporters prior notice thereof, the Court of Appeals for the D.C. Circuit rejected the reporters’ arguments that a journalistic privilege based on the First, Fourth and Fifth Amendments to the Constitution attaches to such third-party billing records. (Reporters Comm. for Freedom of Press v American Tel. & Tel. Co., supra.) The court held that the right to gather nonconfidential information from third-party sources, while it may inhibit news-gathering ability, does not abridge reporters’ constitutional rights. In this case the plaintiff does not even clear the first hurdle of such a claim because he cannot demonstrate any State action involved in the improper issuance of the subpoena by the defendants. In *38 contrast to the facts in Reporters Comm., neither the court nor any other government agency assisted in the issuance of the subpoena.
The ruling in Reporters Comm, (supra) remains undisturbed by that line of Federal and State cases which cloak journalists’ nonconfidential sources of news with a qualified privilege against disclosure, which was codified in 1990 with the addition of subdivision (c) to Civil Rights Law § 79-h. (See, United States v Cuthbertson, 630 F2d 139, 147 [3d Cir], cert denied sub nom. Cuthbertson v CBS, Inc., 449 US 1126 [1981]; O’Neill v Oakgrove Constr., 71 NY2d 521, 527-528 [1988].) Disclosure of the nonconfidential sources of news which reporters have in their possession cannot be compelled now unless the party seeking production can show by clear and convincing evidence that such sources (1) are highly relevant and material, (2) are critical or necessary to the party’s claim or defense, and (3) are not obtainable from any alternative source. (Civil Rights Law § 79-h [c]; O’Neill v Oakgrove Constr., supra.) The court perceives no reason to expand the constitutional protection so that it cloaks third-party sources of nonconfidential information with a similar qualified privilege. To do so would be to put off limits to government investigators routine access to sources of evidence such as hotel, taxi, or airline flight records of reporters anytime access to these types of records might peripherally disclose their nonconfidential sources of the news. (See, Reporters Comm. for Freedom of Press v American Tel. & Tel. Co., at 1048-1049.) We have not adopted the position that everything newspapers and reporters do is sacrosanct.
Plaintiffs fourth cause of action seeks $10,000,000 for the alleged intentional infliction of "mental duress [sic]”, i.e., emotional upset, out of concern his confidential sources might be exposed. The four elements of this tort are "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.” (Howell v New York Post Co., 81 NY2d 115, 121 [1993].) Plaintiffs protestations to the contrary, none of these elements exist and his claim fails on all four counts. (Supra.)
Plaintiffs fifth cause of action seeks $10,000,000 for the loss of consortium of his wife, Margaret. It is alleged that upon learning the telephone records were subpoenaed, she was unable to perform the usual duties of a wife, and because of her emotional upset his comfort and companionship has been disturbed. No triable issue is raised by such allegations.
*39 Plaintiffs sixth cause of action seeks $10,000,000 for the alleged tortious interference with plaintiff’s contract with NYNEX. Plaintiff does not nor could he point to any contractual right to the privacy of the existence of his phone calls. There has been no interference with his contractual relations with NYNEX nor has his contract with NYNEX been breached. (Kronos, Inc. v AVX Corp., 81 NY2d 90 [1993].)
Plaintiffs seventh cause of action seeks $10,000,000 for defendants’ alleged violation of Judiciary Law § 487 which, inter alia, makes it a misdemeanor for an attorney to intentionally deceive the court or any party and it allows the recovery of treble damages in a civil action for a violation of the statute. The "deception” allegedly practiced by the defendants is the false representations in the subpoena they issued to NYNEX that there was a judicial hearing scheduled for July 12, 1995, for which the records were required. By its terms section 487 applies only to deceit of "the court or any party”. This did not occur in the case at bar since NYNEX, the recipient of the subpoena, was not a party to the action. Further, plaintiff himself was not a party to the landlord-tenant proceeding when the alleged deceit occurred. Section 487 is clearly inapplicable. (See, Beshara v Little, 215 AD2d 823 [3d Dept 1995]; Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro, 187 AD2d 384, 386 [1st Dept 1992].)
Plaintiff’s eighth cause of action seeks $10,000,000 for defendants’ alleged abuse of process. To establish a claim of abuse of process, three elements are required: (i) regularly issued process, (ii) intent to do harm without excuse or justification, and (iii) use of process in a perverted manner to obtain a collateral objective. (Curiano v Suozzi, 63 NY2d 113, 116 [1984].) Here, the defendants had a good-faith basis for seeking discovery in the landlord-tenant litigation. They were certainly justified in trying to protect their client, Ms. Lyons, from being harassed by her landlady. This justification, while it does not legitimize their conduct, removes one of the underpinnings necessary to establish an abuse of process. (See, O’Brien v Alexander, 898 F Supp 162, 167-168 [SD NY 1995].) Since the subpoena was not issued to obtain a collateral objective, the plaintiffs eighth cause of action must also be dismissed.
Finally, we turn to the plaintiffs motion to amend his complaint to add a ninth cause of action for violation of Penal Law § 250.30 — unlawfully obtaining communications information. In contrast to Judiciary Law § 487, Penal Law § 250.30 does not provide for a civil cause of action for damages. Nor *40 should the court infer any legislative intent to create a private cause of action for violation of this Penal Law provision. While article 250 of the Penal Law is entitled "Offenses Against the Right to Privacy”, the Legislature has declined to expand the right of recovery for invasion of one’s privacy beyond that which is provided in article 5 of the Civil Rights Law. (Howell v New York Post Co., supra, 81 NY2d, at 124.) The Legislature’s rejection of bills to expand this area of the law has made our courts reticent to embrace a common-law right of privacy. (Supra, at 123 [and cases cited therein].) In the absence of any evidence of a legislative intent to create a private cause of action for violation of Penal Law § 250.30, the courts have no business inferring one. For this reason, the plaintiff’s cross motion to amend the complaint, while usually freely granted, should be denied. (East Asiatic Co. v Corash, 34 AD2d 432, 434 [1st Dept 1970].)
Plaintiff’s motion for leave to amend his complaint to request a declaratory judgment is without basis. There is no need to declare the rights and obligations of the parties, and the motion is denied. If the damages are only speculative at best, and not demonstrably real, an abstract declaration is to no avail.
Defendants’ attempt to subpoena plaintiff’s phone records may have been improper, but the lack of injury is palpable. Not only did Margaret Greenfield move to punish defendants with sanctions in the landlord-tenant action for violating CPLR 3120 (b), she moved to amend her complaint to add the attorney defendants here as defendants in her landlord-tenant action to assert essentially the same causes of action as are now alleged in Mr. Greenfield’s complaint in the case at bar. Justice Lowe denied both motions on the grounds that the allegations had not been substantiated. By all reasonable standards of conduct, Justice Lowe’s decision should have ended the Greenfields’ crusade to vindicate their rights. Nevertheless, they sought to battle once again.
The rancor and bitterness of New York’s landlord-tenant disputes is legendary, but when they lead to a dubious lawsuit based on utterly spurious causes of action and claims of imaginary damages, such as presented here, sanctions are called for. It is plaintiff who has asked for sanctions, as well as attorneys’ fees. That application is denied, but it is defendants to whom sanctions should be awarded. Sanctions are to be awarded against either an attorney or a party or both for frivolous conduct when the position taken is completely without merit in law or fact. The fertile imagination of plaintiff’s at *41 torney has led him to plead every conceivable and inconceivable cause of action, though all are without merit, and plaintiff, individually, seeks over $70,000,000, plus punitive damages and attorneys’ fees, to slake his outrage and high dudgeon. The imposition of sanctions may properly be done on the court’s own initiative, and here, the frivolous nature of the pleadings and the supporting affidavits is self-evident on the record. Under those circumstances, the court will direct sanctions against plaintiffs attorney in the sum of $6,000 and against plaintiff individually in the sum of $4,000. The extreme effort to which defendants were put in answering the unwarranted charges demonstrates the appropriateness of such sanctions, which shall be paid in accordance with the Rules of the Chief Administrator of the Courts (22 NYCRR 130-1.3).
Defendants’ motion for summary judgment dismissing the complaint is granted and the plaintiffs motions for leave to amend his complaint and for leave to subpoena NYNEX and the subpoena clerk are denied.