In the Matter of ROTRAUT L.U. BEINY, as Trustee of the Trust Created by ELIZABETH N.F. WEINBERG, as Grantor.

ROTRAUT L.U. BEINY, Appellant-Respondent, v MARTIN WYNYARD, Respondent-Appellant.

First Department, December 9, 1987

**APPEARANCES OF COUNSEL**

*Bernard S. Meyer* of counsel *(Philip L. Graham, Jr.,* and

*Mark McCall* with him on the brief; *Sullivan & Cromwell* and *Meyer, Suozzi, English & Klein, P. C.,* attorneys), for respondent-appellant.

*Heather D. Diddel* of counsel (*David F. Dobbins, Richard D. Parsons, Thomas W. Pippert, Ann Loeb* and *Richard H. Savage* with her on the brief; *Patterson, Belknap, Webb & Tyler,* attorneys), for appellant-respondent.

## OPINION OF THE COURT

MURPHY, P. J.

We refer this proceeding to the Departmental Disciplinary Committee for investigation, including an inquiry by the Committee into the August 3, 1987 report of the Wall Street Journal that Donald Christ, a member of Sullivan & Cromwell, allegedly assaulted an attorney for trustee Beiny in the Surrogate's Court at a conference in this case.

Trustee Beiny's motion for the sealing of the record is granted to the extent of directing the sealing of copies of the suppressed documents or any part of their contents, with costs to trustee Beiny.

Petitioner Wynyard's motion for leave to reargue, renew or appeal is denied, with costs to trustee Beiny.

As to reargument, petitioner points neither to a fact overlooked nor a principle of law misapplied by this court.

As to renewal, the motion fails because the facts underlying it could have been proved before the Surrogate, assuming that a motion for leave to renew may be made after an appellate determination. In any case, the facts offered by petitioner in support of renewal would not persuade us to a determination of the appeal other than the one that we have ordered.

As for leave to appeal, the issues cited by petitioner are insufficient to warrant review. First, if petitioner's counsel, Sullivan & Cromwell, believe that an evidentiary hearing should have been held upon the serious charges of unethical conduct made against them before the Surrogate, their demand for that hearing should have been made at that time. No demand was made then or upon the appeal; no hearing will be granted now. Second, petitioner's claim of a joint attorney-client privilege is as meritless as his raising of it after his counsel had unlawfully obtained the mass of documents to which the privilege relates. Third, petitioner's claim that this court, without examining the prejudice to both

parties, disqualified his counsel who had reviewed only "a finite number of privileged documents" is a minimalist construction of the record. Our opinion shows that Sullivan & Cromwell's misconduct compelled us to consider the issue of prejudice and, as for the "finite number" of documents obtained by petitioner's counsel, those documents involve more than 10 years of a law firm's representation of persons other than petitioner. A "finite number" may mean any number, and in this case the number is indeed many.

In ending this appeal, it might be useful to trace the lines of certain features of the case for they show how this court, faced each morning with matters involving profound issues of liberty and property, can be burdened by an appeal such as that at bar, an appeal that is before us solely because of the misconduct of lawyers in pursuit of a fee. We speak of the matter because it extends beyond the ownership and transfer of porcelains, and well beyond the interest of a law firm in its reputation. Our consideration of the case is enlarged by issues involving the ethical norms required of attorneys as advocates.

Petitioner's counsel, Sullivan & Cromwell, believing that the liquidator of the law firm of Greenbaum, Wolff & Ernst had factual information concerning the property at issue, served a subpoena duces tecum and notice of deposition directing the liquidator to appear for examination with all the papers concerning certain clients, including trustee Beiny. No notice was given by Sullivan & Cromwell to the other parties. The subpoena was knowingly aimed at privileged materials, and no court would have sustained its broad demand. In order to give the subpoena a sharper edge, Sullivan & Cromwell enclosed it in a letter that deceptively represented to the liquidator that Sullivan & Cromwell's client, petitioner Wynyard, was the executor of the estate of a former client of the Greenbaum firm. Sullivan & Cromwell, having thereafter received from the liquidator the mass of papers to which no law but only its deceit entitled it, then canceled the day fixed for the liquidator's examination. Within weeks, the trustee, ignorant of the raid upon Greenbaum's papers, was examined in London by Sullivan & Cromwell who not only used those papers to surprise her but refused to disclose how the papers had been obtained. When the trustee's counsel learned how Sullivan & Cromwell had obtained the papers, they asked for their production, but Sullivan & Cromwell refused, unless the trustee made concessions in discovery. Only after the trustee

was driven to obtain an order of the Surrogate in December 1985, granting the trustee access to the papers, did the trustee learn the extent of Sullivan & Cromwell's massive intrusion into the trustee's privileged papers; and not until July 1986 did the trustee have in hand an order of the Surrogate suppressing all but 7 of 114 documents as to which the trustee claimed privilege.

In consequence of Sullivan & Cromwell's conduct, this court has had placed before five of its Justices about 1,700 pages of record and briefs, to say nothing of paper footage given to motions that have since slid into the dark of appellate memory. Petitioner Wynyard's case, which may be one having substantial merit, has been delayed by about 2½ years given over to the legal debris that now lies before us. He has been left by Sullivan & Cromwell's conduct to search for other counsel who will probably bill him for the reading of the lengthy record generated by Sullivan & Cromwell's misconduct. Trustee Beiny has been driven down a legal gauntlet, arched by fees of expensive counsel and hedged by the anxiety to which Bench and Bar are often insensible. In short, upon facts that should have led Sullivan & Cromwell to a prompt, practical resolution, one that would have avoided delay, fees and the worrying of court and clients, Sullivan & Cromwell chose instead to drive the trustee toward the steps of the Surrogate's Court and, ultimately, both petitioner and the trustee to the steps of this court. Having arrived in this court, Sullivan & Cromwell, in protection of its reputation, then set about the making of arguments that, startlingly curious in design, required the time of this much pressed court to identify and answer.[1] We will describe only several of these arguments. Cousins to them, equally strange looking, may be found sitting in the briefs.

Sullivan & Cromwell argued on the appeal that its associate, Garrard Beeney, who had engineered the acquisition of the now suppressed documents, was procedurally correct in his obtaining of the papers without notice to the parties. The argument was notable if only because it might have caused an applicant's failure upon the Bar examination, to say nothing of its use against Sullivan & Cromwell by its adversaries in other actions. On reargument, petitioner's additional counsel, retained for the motions at bar, made for safer waters, conced-

---

1. A close analysis of petitioner's arguments has been appended to this opinion as an Addendum.

ing that Beeney was in error but that Beeney had acted innocently. In short, Beeney had known what he was doing but did not know that it was wrong. As far as our research has gone this is the first instance, at least in this court, in which a breach of the Civil Practice Law and Rules has been met with the defense raised in 1843 in *M'Naghten's Case* (8 Eng Rep 718), a fact that would have startled poor M'Naghten as he stood acquitted in the dock. The record shows that Beeney indeed knew what he was about when he palmed off petitioner as the executor of the estate of a decedent whose will was never probated, and when he canceled a deposition that he never intended to conduct. The record shows that even though Donald Christ, a senior partner at Sullivan & Cromwell, must have known at the very least of the way Beeney had acquired the privileged papers, still nothing was done to right what must have seemed to Mr. Christ to have been wrong. Instead, Sullivan & Cromwell in their prosecution of the case thereafter used the papers against the trustee. As for the argument that the liquidator was in substance a volunteer in need of a subpoena as a kind of receipt for his files, we give to it the same value that we have given to Beeney's singular belief that petitioner was the executor of an estate unknown to any probate court.

Petitioner's claim that the trustee and he had been jointly represented by the Greenbaum firm, a claim unproved before the Surrogate, can hardly be a foothold in justification of Sullivan & Cromwell's raid upon the Greenbaum files. Our cachet of approval upon such a primitive notion of discovery, to say nothing of the extension of such a principle throughout our law, would entice the invasive, disorderly mind in an area in which rights must be judicially or consensually fixed before parties proceed in the gathering of facts.

Last, it is disingenuous for petitioner's counsel to argue that we did not find that the suppressed documents were substantially related to the issues. We suppose that petitioner's counsel read our statement that "among the matters to which the documents refer are transactions involving the disposition of the very assets whose ownership is at issue in this proceeding" (129 AD2d 126, 142), or if they did not read our plain statement, they surely must have recalled their own repeated statements concerning the probative value of the suppressed documents. Nor do we think it an exercise in candor for petitioner's counsel to say on this motion that the suppressed documents are not substantially related to the issues before us

when the record shows that, among other things, petitioner's counsel themselves characterized those documents as proof that the trustee unlawfully transferred the property at issue to entities in her control, defrauded the petitioner, violated her fiduciary duties to him, and is a perjurer.

In sum, this appeal is an example of the accidental subversion of the interests of a client by his own advocates who acted as if the law did not apply to them. For this court to have done less than disqualify Sullivan & Cromwell for its misconduct in this case, for this court to have chosen a lower standard that both diminishes the integrity of the judicial process and cuts into the heart of the attorney-client privilege, might be congenial to casual temperaments at home in the shade. Courts, however, must make law as they did anciently, in the open and in the sun where those who have eyes may see and those who have ears may listen.

### ADDENDUM

It will be recalled that we concluded in our opinion upon the appeal (129 AD2d 126, *supra)* that Sullivan & Cromwell had deliberately violated the rules governing the conduct of discovery in order to obtain, covertly and without opposition, sweeping disclosure from the liquidator of the defunct law firm of Greenbaum, Wolff & Ernst. Documents thus obtained, among which were predictably a considerable number immune from disclosure by reason of the attorney-client privilege, were proof of consultations between petitioner's adversary, respondent Rotraut L.U. Beiny (hereinafter the trustee) and attorneys in the Greenbaum firm. Many of the documents bore directly on the central issue in the present accounting proceeding, namely, the rightful ownership of certain art objects allegedly improperly diverted by the trustee from the inventory of the Antique Company of New York in which petitioner, as a trust beneficiary, holds a 45% interest, to certain trusts situated in Liechtenstein over which the trustee has exclusive control. We disqualified Sullivan & Cromwell, citing its intentional misconduct, the resulting prejudice to the trustee against whom the improperly obtained materials were used extensively both individually and en massé, the need to assure the trustee that the wrongfully acquired information would not be used prospectively, the need to sanction adequately the blatant misconduct involved so as to deprive the offending attorney and law firm of any benefit possibly to

be deprived therefrom, and the need to deter similar abuses which seriously compromise the integrity of the judicial process.

On reargument, petitioner takes issue with our finding that there was any intentional wrongdoing by Sullivan & Cromwell. Petitioner does not deny that his counsel, Garrard Beeney of Sullivan & Cromwell repeatedly contacted the Greenbaum liquidator, John A. Wiener, in March 1985, to obtain information concerning Greenbaum's representation of the Weinberg interests; or, that after Wiener informed Beeney that he had no information to give and "had no authorization from the executor of the Weinberg estate or anyone else to allow him [Beeney] access to [the Greenbaum files]", Beeney served Wiener with a subpoena duces tecum dated March 8, 1985, commanding him to appear for deposition on March 22, 1985 and to bring with him "all documents within [his] possession, custody or control which reflect, refer or relate to Hans Weinberg, Martin Wynyard, Ruth Wynyard, Rotraut Weinberg Beiny, the Antique Company of New York, Inc., the Antique Porcelain Company, Michelle, Inc., and/or the Antique Porcelain Company, Ltd., London"; or, that no notice of Wiener's March 22 deposition was afforded petitioner's adversary or her counsel; or, that the subpoena was sent with a letter, authored by Beeney and dated March 8, 1985, stating that the subpoena was served on behalf of Sullivan & Cromwell's client, Martin Wynyard, who, it represented "is the executor and an heir to Mr. Weinberg's will"; or, that in fact Wynyard was not the executor of the Weinberg estate, the Weinberg will never having been offered for probate; or, that, soon after Wiener had delivered to Sullivan & Cromwell the thousands of pages of documents amassed over the more than 10 years the Greenbaum firm represented the persons and entities named in the subpoena, his deposition was canceled; or, that Sullivan & Cromwell made no attempt to notify the trustee that the documents had been obtained until the continuation of the trustee's deposition in London in early April 1985, at which time the documents were used to examine her; or, that Beeney refused to divulge to the trustee's counsel at the London deposition how and from where he had obtained the documents; or, that after the trustee's counsel traced the source and means of the disclosure and requested copies of what had been obtained, Beeney repeatedly refused to make copies of the documents available except in exchange for "reciprocal disclosure", even though he knew that he had

been given the originals; or, that it was not until some eight months after Beeney acquired the documents that he finally turned them over when ordered to do so by the Surrogate in the context of a ruling upon the trustee's first motion for suppression and disqualification.

Admitting to all of this, uncontradicted in the record on appeal, petitioner nevertheless maintains that our inference of intentional misconduct was erroneous. Petitioner does not contend that Beeney did not do what he did deliberately; that much is concededly beyond reasonable dispute. Rather, petitioner urges that Beeney's conduct, deliberate though it may have been, was innocent because he did not intend to break any rules. Thus, petitioner would have us conclude that Beeney, out of misunderstanding in one instance and ignorance in the other, made two rather insignificant errors, and that his errors, in any case, did not prejudice the trustee. At the very least, it is urged that the record raises questions of fact in this respect.

Initially, it is noteworthy that, until this point Sullivan & Cromwell has maintained that no errors were made and that its conduct was in all respects proper. Now, in the wake of this court's opinion, it has suddenly dawned upon Sullivan & Cromwell that Beeney should have notified the trustee of Wiener's deposition pursuant to CPLR 3107, and that Beeney was in error when he represented in the letter accompanying the subpoena that Wynyard was the executor of the Weinberg estate. Protestations of professional misunderstanding and ignorance about matters as basic and obvious as those here involved must be viewed with considerable skepticism, particularly when they occur so late in the litigation and in the face of an adverse appellate determination.

Contrary to petitioner's arguments on the motions at bar, the command of CPLR 3107 is not at all unclear nor is there any question involving what counsel characterizes as its delicate and subtle interplay with the subpoena provisions of CPLR article 23. CPLR 3107 states that "A party desiring to take the deposition of any person upon oral examination shall give to each party twenty days' notice, unless the court orders otherwise." We doubt very much that it took the decision of this court to foster the realization by petitioner's counsel that this provision was not complied with. Nor do we think that it required an appellate decision to apprise Sullivan & Cromwell that to be named an executor in an unprobated will confers no power on the designee unless the will is probated.

Thus, even if we were to assume what we reject, that Beeney's errors were innocent at their inception, there would still exist no satisfactory explanation why Sullivan & Cromwell permitted his errors to be perpetuated and exploited for improper gain for months after their commission, and doggedly maintained on two motions before the Surrogate and in its appellate presentation to this court that its performance had been flawless. At the time of the events in question, Beeney was an experienced attorney. He was apparently held in sufficiently high regard to be entrusted with responsibility for the conduct of litigation of considerable importance to the firm. That there existed such stunning lacunae in his understanding of procedure and the law of wills as, those now belatedly claimed is as inconceivable as it would be inexcusable. Indeed, Beeney, in his affidavit authored for the purposes of the present motion, admits what was entirely reasonable for this court to suppose in disposing of the appeal, namely, that he reviewed CPLR 3107, and, therefore, knew what it required, before serving Wiener.[2] Beeney's work in this matter was, moreover, supervised by Donald Christ, a senior partner at Sullivan & Cromwell. If Christ did not know earlier, he was certainly informed by the trustee's counsel in July 1985 about the manner in which Beeney obtained the Greenbaum files. Nothing was done to rectify the situation. Indeed, Sullivan & Cromwell continued to use the documents, including some of them in its August 1985 motion for a temporary restraining order, notwithstanding the fact that the clearly improper conduct of its associate had been brought to the attention of one of its senior partners. There can be no clearer indication that Sullivan & Cromwell fully ratified and endorsed the misconduct of its associate. It cannot now claim in good faith, for the first time on a motion to reargue an appeal, that its errors were innocent.

There is, in any event, not a shred of evidence in the appellate record which would cause us to revise our prior findings or remand this matter for an evidentiary hearing.

Petitioner attributes great significance to the fact that Wiener requested a subpoena. Thus, it is urged that the March 8, 1985 subpoena duces tecum was issued as nothing more than an accommodation to Wiener who was in essence a

---

2. Beeney's new affidavit reads in relevant part, "Since the Blumberg subpoena form referred to a deposition, I also recall reviewing Article 31 of the CPLR. The only notice provision that I found in Article 31 required that opposing parties be given 20 days' notice of deposition. CPLR § 3107."

"volunteer" and who wanted a subpoena for no other purpose than to place in his files. Wiener's account of what transpired which petitioner conceded on appeal was uncontradicted in all material respects reads, however, as follows:

"3. In the summer of 1984 and again in the winter of 1985 I received telephone calls from Garrard R. Beeney, Esq. of Sullivan & Cromwell asking for information concerning Weinberg matters or in the alternative asking for access to the Greenbaum, Wolff & Ernst files of these matters. I told Mr. Beeney I had no information to give him and that the files were in the Greenbaum, Wolff & Ernst warehouse and that I had no authorization from the executor of the Weinberg estate or anyone else to allow him access to them.

"4. On or about March 8, 1985 I was served with a combined notice of deposition and a subpoena duces tecum by Sullivan & Cromwell, a copy of which subpoena is attached hereto as Exhibit A. It required the production at a deposition of all documents relating to the Weinberg matters. A copy of Mr. Beeney's letter which came with the subpoena is attached as Exhibit B. Knowing that there was litigation involved I inquired of Mr. Beeney why I would not need Mrs. Beiny's authorization to make the files available. I was assured by Mr. Beeney that the files would be made available to Mrs. Beiny's attorneys, then Shearman & Sterling. I therefore retrieved the extensive files from the warehouse and had them delivered to Sullivan & Cromwell in accordance with the subpoena. Soon thereafter, Mr. Beeny wrote that my deposition was cancelled.

"5. In April of 1985 I received a telephone call from Kenneth Caruso, Esq. of Shearman & Sterling inquiring as to the files. I informed him that I had delivered the files to Sullivan & Cromwell in accordance with the subpoena."

This is not the account of a volunteer. Even if Wiener was not personally opposed to turning over the requested material, he realized that the documents were sought in connection with ongoing litigation. For that reason, he asked for a subpoena, assuming that it would be issued in conformity with the applicable CPLR notice provisions, and that Mrs. Beiny would, therefore, have full opportunity to oppose the disclosure requested on any ground she saw fit, including that of privilege. Whatever Wiener's personal attitude towards release of the Greenbaum files, it did not excuse Sullivan & Cromwell from issuing a proper subpoena and giving timely notice to the trustee of the scheduled deposition.

Nor did it release Sullivan & Cromwell from the obligation not to misrepresent the facts. In view of Wiener's initial refusal to release the files on the ground that he had no authorization to do so from the executor of the Weinberg estate, Beeney's subsequent written representation accompanying the subpoena that Dr. Wynyard was, in fact, the Weinberg executor, cannot be deemed a mere inconsequential "imprecise formulation" as petitioner now contends; it was a misrepresentation of fact plainly misleading to Wiener. That Beeney may have, as he claims, earlier informed Wiener over the telephone that the Weinberg will had never been offered for probate, was not license for him to represent an entirely contrary state of affairs in conjunction with the service of his subpoena. Indeed, in light of the fact that Beeney admitted knowing that the Weinberg will had never been probated, there existed before us on appeal, as there exists now, no satisfactory benign explanation for his misrepresentation of Wynyard's status and authority to Wiener. His most recent claim of ignorance—"I understood that because the will *appointed* Wynyard to be an executor, he was an executor" (emphasis in original)—is on its face incredible.

Apart from these two facts (i.e., that Wiener requested the subpoena, and that Beeney previously informed Wiener that the Weinberg will had not been probated), petitioner fails to point to any other matter allegedly overlooked when we determined that Beeney deliberately abused process and made a material misrepresentation to obtain the Greenbaum files. Petitioner does, however, argue that we improperly resolved one issue of fact respecting whether Beeney offered Wiener the assurance, upon which Wiener indicates reliance, that copies of the Greenbaum files would be made available to the trustee.

To begin, whether or not Beeney offered this assurance, our essential finding of deliberate misconduct in Sullivan & Cromwell's acquisition of the Greenbaum files would remain unaffected. Those facts which were undisputed on appeal *(see,* at 196-197, *supra)* permitted but one conclusion, i.e., that Beeney knowingly abused process to obtain rapid, sweeping and unopposed disclosure of materials, most of which would not otherwise have been readily available *(see,* 129 AD2d 126, 133-134, *supra),* and some of which ought not to have been made available under any circumstances. The undisputed facts also pointed unerringly to the conclusion that the material obtained by Beeney was retained for a lengthy period and used

by Sullivan & Cromwell, with full knowledge of the manner in which it had been acquired, for improper gain in the litigation.

In any case, the one disputed factual issue resolved on appeal was, if disputed at all, only obliquely so. Accepting petitioner's characterization of the Beeney and Wiener affidavits as "not entirely consistent" on whether Beeney had promised that the documents would be made available to the trustee, we resolved whatever inconsistency existed in accordance with Wiener's account (see, 129 AD2d, at 135, n 1, supra). The inconsistency, if it may be called that, between the two affidavits (Beeney's and Wiener's) which petitioner's appellate counsel conceded were "entirely consistent in all material respects", was de minimis. Wiener's affidavit states that the assurance concerning the availability of the documents was given and that the Greenbaum files were "therefore" removed from storage and delivered to Sullivan & Cromwell. Beeney's original affidavit does not deny that the assurance was given; he merely notes that "Mr. Wiener never stated that he was producing the documents on condition that copies be provided to Beiny or her counsel." Whether Wiener made his reliance on Beeney's assurance known would hardly seem to matter; the point is that the fact of the assurance having been given is not denied in the Beeny affidavit that was before this court on appeal. Moreover, Wiener's recollection of having been promised that copies of the documents would be provided the trustee is confirmed in the affidavit of the trustee's former counsel, Kenneth A. Caruso of the firm of Shearman & Sterling, who contacted Wiener shortly after returning from the trustee's April 1985 London deposition where the Greenbaum documents first appeared. Caruso states: "I telephoned Mr. Wiener, who said that a subpoena had been served on him. I asked Mr. Wiener to send me a copy of the materials he had produced to Sullivan & Cromwell. He said that he could not do that because he had sent the original files to Sullivan & Cromwell and had not retained copies. However, he did send me a copy of the subpoena together with copies of both a letter authorizing the removal from storage of specific files of Greenbaum, Wolff & Ernst and a receipt given to Sullivan & Cromwell. A copy of the letter and the receipt are annexed hereto as Exhibit B. Mr. Wiener said that someone from Sullivan & Cromwell had told him that someone from Sullivan & Cromwell would 'take care of' providing copies of those materials." To have credited Wiener's account in these

circumstances hardly seems an abuse of our fact-finding power. Clearly, no evidentiary hearing was required to resolve the issue, to the extent there was one, as to whether an assurance had been given. Nor is there any question that the promise made Wiener was never kept.

Petitioner, who we note, stated on appeal, "There is no discrepancy in the record concerning the facts which *are* central to this appeal—the contents of the Greenbaum documents and the circumstances surrounding the production of those documents" (emphasis in original), fails to identify any other "disputed" issue presented by the appellate record. The facts necessary to our determination of intentional misconduct were without exception undisputed and for this reason, we saw no purpose in remanding the matter for an evidentiary hearing. And, although petitioner's counsel now complain bitterly that they are being deprived their day in court, no such claim has been raised until this point.

The within motion was initially decided by the Surrogate exclusively on the basis of written submissions. No objection to this procedure was registered, or request for an evidentiary hearing made by Sullivan & Cromwell despite the fact that the propriety of its attorney's conduct was put directly at issue by the trustee's allegations. In deciding the original motion, the Surrogate observed pointedly, "respondents' *[sic,* should be petitioner's] attorney clearly obtained material in a manner not in accord with proper practice in this state." This observation notwithstanding, petitioner's counsel apparently remained content to rest on its written submissions and made no request for an evidentiary hearing in connection with the trustee's renewed motion. Upon renewal, the Surrogate specifically adhered to her previous determination noting, "In the prior decision of this court * * * the court stated that the documents were improperly obtained. Nothing that has been submitted herein convinces the court to change its original opinion" (133 Misc 2d 950, 951). Still, no request for reargument or renewal or for an evidentiary hearing was made. Instead, the parties appealed from the Surrogate's determination upon the record as it then stood. And, as noted, petitioner expressly conceded in its appellate presentation that there was no dispute concerning the circumstances under which the Greenbaum files were obtained. Now, after an adverse appellate determination, petitioner has suddenly discovered numerous, although largely unspecified, disputed issues which, it is claimed, necessitate an evidentiary hearing. The argument is

actually set forth that the record upon which the appeal was decided was adequate only for a determination in petitioner's favor. Obviously, this is not so. As a general matter, it would appear clear that a record may not be presented for appellate review on the assumption that it will be construed to support favorable determinations only. In this case especially, where findings of serious impropriety had already been made by the Surrogate, petitioner's counsel had more than adequate fore-warning of the possibility that the remedy imposed by the Surrogate (suppression) might be found inadequate by this court. That counsel did not under these circumstances demand a hearing would seem indicative of a considered judgment that their position would be best served by proceeding without one. Indeed, even on appeal no alternative request was made for a remand to resolve disputed factual issues. The lack of such a request notwithstanding, we would still have remitted the matter had material factual issues been presented by the record (see, *Elghanayan v Elghanayan,* 107 AD2d 594; *Kaufman v Kaufman,* 63 AD2d 609; *Saftler v Government Employees Ins. Co.,* 95 AD2d 54, 57), but they were not and the appeal was appropriately decided on the basis of the record as it stood. Remand is no more appropriate now on this application for reargument than it was upon our consideration of the appeal.

Petitioner raises three other matters in support of its motion for reargument. First, it is urged that petitioner was entitled to obtain the privileged documents because although privileged, they were not privileged from him; second, that we neglected to balance the prejudice disqualification would cause petitioner against the prejudice Sullivan & Cromwell's continued representation of petitioner would work upon the trustee; and, third, that we failed to determine whether the suppressed materials were substantially related to this proceeding.

The first of these matters was considered at length by the Surrogate and by this court (129 AD2d, at 139-140, *supra).* Petitioner's argument is merely reiterated on the present motion and has no more merit now than it did previously. As the Surrogate found, petitioner and his sister, the trustee, were not similarly situated vis-à-vis the Greenbaum firm. The trustee, as her father's alter ego, and as president, chief executive officer, and majority shareholder of the Antique Company of New York, conferred extensively with Greenbaum on matters pertaining to the structure and operation of the family businesses. By contrast, petitioner, whose role respect-

ing the operation of the family businesses was minimal, had far more limited contact with Greenbaum. There is no indication in the appellate record that the otherwise privileged communications between the trustee and Greenbaum, or between Greenbaum and other members of the Weinberg family, were meant to be placed at petitioner's disposal. That petitioner had some relationship with Greenbaum is not disputed, but the nature of the relationship and its scope of concern were not shown by petitioner to be sufficiently congruent with that of the numerous other persons and entities whose privilege was implicated by the demand in the March 8, 1985 subpoena to permit petitioner unfettered access under the joint representation doctrine to the extensive client files sought.

It must be observed that petitioner's claim of entitlement under the joint representation doctrine to the entire Greenbaum files on the Weinberg family and businesses cannot, even if we were to suppose that it possessed some measure of merit, be advanced to validate retrospectively the disclosure which has occurred. If petitioner had any arguable right to the material sought, it was incumbent upon him to assert that right in such a way and at such a time that it might have been tested by means of the adversary process before the disclosure occurred. Litigants cannot be permitted first to obtain broad disclosure predictably including privileged material, and, indeed, to make use of the documents produced, and only afterward to establish their right thereto. The attorney-client privilege would amount to very little if this were allowed and courts would be increasingly forced to expend judicial resources to limit the harmful consequences of disclosures improperly and irrevocably made. By rights, petitioner's joint representation argument, which was not made until many months after the concededly privileged material had been covertly obtained and used, should never have been entertained by the Surrogate or for that matter, this court; it should have been deemed waived. In any case, as we were at pains to make clear in our decision, the propriety of suppression did not turn necessarily upon whether the documents acquired from Greenbaum were ultimately obtainable (i.e., whether they were privileged), but upon the impropriety of the means employed by Sullivan & Cromwell to elicit their disclosure and the ensuing prejudice to the trustee. (See, 129 AD2d, at 136-137, *supra.*) Thus, even if petitioner had succeeded in establishing before the Surrogate, in the context of

the present motion, that the suppressed materials were not privileged as against him, he would not thereby establish any present right of access. The right of access to materials such as those here sought by petitioner does not exist apart from its timely and procedurally sound assertion.

We turn now to the issue of prejudice and to the related issue of whether the privileged documents obtained by Sullivan & Cromwell from the Greenbaum files contained information substantially related to the present proceeding. Petitioner's argument is now, as it was on appeal, that the trustee has not been prejudiced by the petitioner's counsel's acquisition of the Greenbaum files because none of the file contents were privileged from him and he would, therefore, have eventually succeeded in obtaining them. Petitioner also maintains in further repetition of the arguments set forth on appeal that even if some of the documents were not obtainable, they are not sufficiently related to the issues in the present litigation to prejudice the trustee's prospects in this proceeding. Petitioner then contrasts the allegedly minimal prejudice to be suffered by the trustee as a result of the disclosure elicited by his counsel with the substantial prejudice disqualification will work upon him and concludes that we failed to balance properly the parties' conflicting interests as we should have when disqualification was at issue.

The premises underlying these arguments are incorrect. As both the Surrogate and this court found, many of the documents obtained by Sullivan & Cromwell from the Greenbaum files were in fact privileged and, as we have already had occasion to reiterate here, petitioner did not demonstrate any right of access to these documents under the joint representation doctrine. Petitioner then would not have obtained these documents under any circumstances. Further, as we expressly found in our opinion (129 AD2d, at 142, *supra)* and as petitioner has repeatedly admitted, many of the privileged documents evidence attorney-client communications bearing directly on the central issue in the underlying trust accounting proceeding—the ownership of the trust assets. There are also among the privileged materials, documents containing statements by the trustee which can be, and have been, used to impugn her credibility.

In this regard, petitioner's present claim that we made no finding that the suppressed documents were substantially related to the issues in the within proceeding is a bit disingenuous. We did, after all, state quite clearly, "As noted, the

Greenbaum files reflect the firm's representations of the Weinberg family and its businesses for a period of more than 10 years. And among the matters to which the documents refer are transactions involving the disposition of the very assets whose ownership is at issue in this proceeding" (129 AD2d, at 142, *supra*). What is more, the appellate record was virtually riddled with statements by petitioner's counsel describing the pivotal import of the Greenbaum documents to the present controversy. A few examples follow:

"The documents demonstrate that Beiny, a resident of England, has transferred to entities she controls in Europe assets belonging to Dr. Wynyard's Trust of which Beiny is a Trustee, without paying valid consideration."

"The documents also demonstrate the fraud Beiny has committed on the Wynyard Trust and her brother. For example, these documents show that all of Weinberg's collection of antiques was transferred through various companies and trusts to the New York Company".

"The documents also demonstrate that, contrary to Beiny's testimony, her mother did not maintain any collection of antiques apart from that given to the New York Company. The documents further confirm that it was Weinberg's intention that her son share in the family assets."

"The documents unquestionably demonstrate that Beiny has violated her fiduciary duties to her brother and that the antiques held by Beiny in the Liechtenstein entities actually belong to the New York Company and, therefore, to Dr. Wynyard's Trust".

"The documents Beiny seeks to suppress also constitute the most compelling evidence that Beiny has given perjured testimony concerning the ownership of assets she maintains in Europe."

"The documents Beiny seeks to suppress were produced to Wynyard by the firm of Greenbaum, Wolff & Ernst who represented the parties' father and a company he founded, the Antique Company of New York ('ACNY'), and are probative of the true owner of these assets held by the Liechtenstein entities."

For petitioner now to claim after having so characterized the Greenbaum documents, that they are not substantially related to the subject matter of the present proceeding, but are merely "probative", is nothing short of audacious. Without passing on the accuracy of counsel's above-cited assertions

concerning what the documents will prove, it would appear sufficiently clear from these assertions, and, indeed, from an independent examination of them that, as we observed in our opinion, the documents at issue do in fact bear crucially on the central issue in this trust accounting proceeding.

We do not find it necessary to determine, as petitioner argues we should, whether Sullivan & Cromwell's prolonged possession of the Greenbaum documents will "tip the balance" in this proceeding or whether it might be possible for petitioner to prove his case relying exclusively on nonprivileged, properly obtained information. Speculation aside, the unalterable fact is that Sullivan & Cromwell has retained the Greenbaum files and has used them extensively, and that the trustee has as a result suffered actual prejudice and may be prejudiced further; as we noted in our opinion, it is impossible for us to give the trustee the assurance she deserves that the information acquired from the suppressed Greenbaum documents will not in some manner be used to her prospective disadvantage (129 AD2d, at 142, *supra).* It is not the certainty of future prejudice that disqualification is employed to remedy but the potential for prejudice and the appearance of impropriety inherent in situations such as the present one in which a law firm possesses highly relevant confidential disclosures made by a present adversary, and numerous others who never waived their privilege, to former counsel. *(See, Desbiens v Ford Motor Co.,* 81 AD2d 707; *cf., Greene v Greene,* 47 NY2d 447, 453; *Cardinale v Golinello,* 43 NY2d 288, 296.)

It must, moreover, be stressed that this is not a case in which the prejudice is merely a prospect or the impropriety a question of appearance. Here, there has been actual impropriety in the acquisition and retention of the Greenbaum files. The trustee has, as a consequence, been deprived of the right to contest the disclosure, which certainly could have been prevented, before it occurred (129 AD2d, at 133-134, 140-141, *supra).* She has, in addition, been surprised at her deposition with some of the wrongfully obtained documents. And, as petitioner readily acknowledged before the Surrogate, the documents were also used to obtain a temporary restraining order against the trustee: "It is the facts set forth in these documents, among other evidence, which formed the basis for the Temporary Restraining Order issued by this court on August 20, 1985, forbidding Beiny to dispose of or move the assets held by these Liechtenstein entities." A more prejudicial use of privileged material is hard to imagine.

But it is not merely the use of the documents for the information they contain that has prejudiced the trustee. The unwillingness of petitioner's counsel to divulge the source or extent of the disclosure obtained from Greenbaum forced the trustee to pursue her own investigation, and when requests for access to the documents proved unavailing, to bring on the present motion for suppression and disqualification. Sullivan & Cromwell's withholding of the documents in order to extract discovery concessions along with the likelihood that the documents, whose number and contents were substantially unknown to the trustee's counsel, would be used to prejudice the trustee further, placed the trustee in an impossible situation. Far from being a mere strategic ploy, this motion, and the attendant expense of its litigation, were all but necessitated by Sullivan & Cromwell's inexcusable and sustained efforts to squeeze from the improperly obtained documents every bit of advantage they might bestow upon their holder.

As the sort of prejudice which disqualification is ordinarily imposed to avoid has already occurred, and suppression cannot dependably purge the proceeding of the tainted information introduced and relied upon so long and extensively by petitioner's counsel, disqualification was unavoidable in this case. We reached this conclusion reluctantly and, as a fair reading of our opinion indicates, not without consideration of the prejudice disqualification would cause petitioner (see, 129 AD2d, at 143-144, supra). It was, however, our view that, on balance, the trustee's interest in having her rights adjudicated in a fair proceeding unaffected by prejudicial disclosures of confidential material to opposing counsel was the interest which deserved to be protected. Disqualification was the only effective means of protecting that interest. And, although this remedy undeniably has unfortunate consequences for petitioner, he is not left without recourse as the trustee would have been had we ruled differently. New counsel can be retained, albeit at a cost, but in the absence of decisive judicial intervention, the fairness of this proceeding and the integrity of its result would have been placed at unacceptable risk.

In framing the disqualification issue as they have, as one turning exclusively upon the relative prejudice which would be visited on the parties were we to rule one way or the other, petitioner's counsel overlook what should have been obvious from our decision—that it is not only the interests of the parties which are implicated in this case, but the considerable

interest of the courts and the public in maintaining the integrity of the judicial process and the attorney-client relation. Intentional misconduct of the sort committed by petitioner's counsel vitiates and demeans the process and, as this motion demonstrates so vividly, results in substantial additional burdens being placed on both the courts and litigants. This cannot be permitted. Nor can we permit attorneys to view the client files of other attorneys as repositories of valuable information from which they may, at their pleasure, obtain wholesale and unsupervised disclosure without notice to their adversaries.

To have imposed a sanction short of disqualification in this case would have sent a very dangerous message to the Bar. We would in effect have said, you may ignore the rules of discovery and the ethical precepts governing attorney conduct, and thereby, elicit the disclosure of confidential material highly relevant to your case, and if by chance you are discovered and your adversary has the resolve and resources to pursue the matter, we will do no more than suppress the improperly acquired material and require you to pursue discovery in a proper manner. This is to say we would do nothing to sanction the misconduct brought to our attention. The offending lawyer or firm is not punished in any way by being directed not to rely on improperly obtained information and to henceforth obey rules which should have been observed all along; he is simply held to the standard applicable to all attorneys. He may, moreover, be in a better position than if he had obeyed the rules because although the improperly acquired materials are suppressed, he will inevitably retain information therefrom which he will be able to use to guide his conduct of the litigation in ways no court can effectively regulate.

We cannot afford to hold open the prospect of any gain from conduct such as that presented by this case. The sanction of disqualification was, therefore, necessary, not only to protect the trustee's interests but to address adequately the intentional misconduct with which we were confronted. As we stated, "to impose a sanction short of disqualification would be to treat the conduct at issue with a degree of lenity practically inviting its recurrence" (129 AD2d, at 144, *supra*).

We turn now to that branch of petitioner's motion seeking renewal. A motion for renewal is, of course, properly made to the motion court (CPLR 2221) to draw its attention to material facts which, although extant at the time of the original

motion, were not then known to the party seeking renewal and, consequently, were not placed before the court *(Foley v Roche,* 68 AD2d 558, 568). Renewal is granted sparingly, and only in cases where there exists a valid excuse for failing to submit the additional facts on the original application *(supra);* it is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation. Nor is it available to argue new legal theories which could have been previously relied upon but were not on the assumption that what was submitted was adequate *(supra).* Yet, within these limitations, renewal affords parties an additional opportunity to insure that the record as it exists at the conclusion of proceedings in the motion court is complete and reflects their efforts to include within it everything they deem necessary and proper to support their respective positions. Appellate review, which is, of course, limited to the certified record on appeal *(see, Carhuff v Barnett's Bake Shop,* 54 AD2d 969; *Ray v Ray,* 34 AD2d 517), then proceeds on the entirely warranted assumption that the parties have thereto availed themselves fully of the opportunity to make an adequate record. We doubt very much whether in view of the ample opportunity for factual development already provided by the time consideration of an appeal commences and the need for finality in appellate determinations, renewal may be had of a motion, such as this one, as to which there has already been a final appellate disposition on the merits. Assuming, however, but not conceding, that renewal may be appropriate at so advanced a stage, there is every reason to limit its availability strictly to those cases in which crucial facts were at the time of the original motion extant, but could not have been obtained by the party seeking renewal, even if due diligence had been exercised. Moreover, the parties seeking renewal would be under a heavy burden to show, in addition, that he was unable at any time before the perfection of the appeal, to bring the new facts to the motion court's attention as he would have been permitted to do if in fact the criteria for renewal were satisfied *(see, Matter of William H. Van Vleck, Inc. v Klein,* 50 Misc 2d 622, 623).

Judged by these standards, the present motion for renewal is manifestly inadequate. There are no facts, let alone new facts, contained in the submissions supporting this motion which could not have been made part of the record when the original motion was still before the Surrogate. Moreover, most of the purportedly "new" facts are not new at all, and,

therefore, would not, under any circumstances, constitute a proper basis for renewal.

Among the documents presented in support of renewal are affidavits authored by Garrard Beeney, Donald Christ and Philip Graham. The facts recited in these affidavits were, without exception, available for inclusion on the original motion before the Surrogate. Indeed, with few exceptions, the facts in these affidavits *were* presented to the Surrogate and *were* part of the record on appeal and were given due consideration by this court.

Beeney's affidavit reiterates, almost entirely, the substance of his original affidavit. To the extent that it contains any "new" information, that information is hardly helpful to Beeney. Beeney's pleas of professional ignorance, which are indeed brand new, have already been addressed *(see,* at 197-198, *supra).* Another bit of "new" information is Beeney's belated acknowledgment that he always understood that Mrs. Beiny, the trustee, was a client of the Greenbaum firm: *"It was and is* my understanding that Ader and the Greenbaum firm represented Hans Weinberg (who was Wynyard's father) and the Weinberg family—Weinberg, his wife Lisa, and his two children, Martin Wynyard and *Rotraut Beiny"* (emphasis added). If this was in fact Beeney's understanding all along, it must be asked why petitioner's counsel repeatedly asserted before the Surrogate and this court that Beiny was not a Greenbaum client. Indeed, a whole section of petitioner's appellate presentation is headed, "The Trustee had No Attorney-Client Relationship with the Greenbaum Firm." A more fundamental question raised by Beeney's most recent acknowledgment of his long and abiding understanding of the trustee's relationship with Greenbaum is why, when he believed the trustee to have been a Greenbaum client, he felt free to request in his subpoena all of Greenbaum's records concerning her, and apparently felt no need to apprise her, his client's adversary in ongoing litigation, of the request. Even if Beeney was, as he now claims, hopelessly confused by the CPLR and did not understand that notice to the trustee of the deposition scheduled in his subpoena to occur in less than 20 days was already some 6 days overdue at the time the subpoena was served, surely he was not so completely insensitive to the fact that his production demand directly implicated the trustee's attorney-client privilege that he failed to realize that she ought to be afforded notice and given the opportunity to contest the disclosure sought.

There is no other new information in the Beeney affidavit.

The Christ affidavit merely confirms that, prior to its filing, counsel for the trustee in July 1985 sent him a copy of their draft memorandum in support of disqualification. Christ, who apparently regarded the trustee's counsel's allegations of unethical conduct, as nothing more than an attempt to force a settlement on terms favorable to their client, recalls expressing the view that the allegations made against Sullivan & Cromwell were "not helpful" and remembers thinking that they were "highly improper". There is obviously nothing in the Christ affidavit which could not have been put before the Surrogate on the original motion and, in fact, the substance of the Christ affidavit was before the Surrogate. Quite apart from the affidavit's needless and inappropriate repetition of facts already a matter of record, it is very difficult to see what possible relevance Christ's subjective judgment concerning the propriety of the conduct of the trustee's counsel should have to our consideration. The salient fact indisputably confirmed in the Christ affidavit is that Christ was informed in July 1985 of serious and, as we have seen, well-founded allegations of impropriety concerning an attorney litigating an important matter under his supervision, and, as the subsequent history of this litigation irrefutably demonstrates, that he, thereafter, took no steps to remedy the situation; to the contrary, he apparently condoned the continued use of the improperly acquired documents and vigorously maintained that his subordinate actions were entirely proper.

The Graham affidavit is a rather curious document. Its author, Philip Graham, is a Sullivan & Cromwell partner, who has played no prior role in this dispute. He, nevertheless, was either delegated, or volunteered, to approach Mr. Wiener and request him to supplement his previous account (see, at 199, supra) which Sullivan & Cromwell persists in characterizing as "incomplete". Wiener, apparently not sharing this assessment of his prior affidavit, refused Graham's request. Graham, who finds Wiener's refusal wanting in courtesy, was, nevertheless, granted several interviews by Wiener. In his affidavit, Graham recounts what Wiener told him. He does this "by way of an offer of proof" respecting what he believes Wiener would say if called to testify at an evidentiary hearing. Perhaps most remarkable about the Graham affidavit is its utter failure to indicate that anything of significance would be added by Wiener's testimony. But even if the Graham affidavit did raise the possibility of important new revelations

from Wiener, no explanation is provided by Sullivan & Cromwell why Wiener, who has always been available to them was not asked for a supplemental affidavit or subpoenaed to testify while this motion was still before the Surrogate.

In addition to these affidavits, petitioner's voluminous submissions in support of renewal include several communications between him and the Greenbaum firm adduced to establish that Greenbaum represented the Weinberg family as a whole, including, of course, petitioner. From this premise, petitioner argues that he was entitled to the firm's entire files on the representation afforded the family and its business interests.

Petitioner's belated attempt to provide a factual basis for his resort to the joint representation theory would appear a tacit admission that his burden in this regard was not met on the original motion. Indeed, as we observed in our opinion, petitioner proceeded through the appeal on the entirely mistaken assumption that it was the trustee's burden to establish that the concededly privileged materials were also privileged from him (129 AD2d, at 139, *supra*).

In any case, petitioner offers no valid excuse for not submitting the evidentiary matter he now advances at an earlier time; the documents upon which petitioner now depends were available to him long before the trustee filed her motion. Moreover, even if their consideration were appropriate at this late date, nothing in these documents would cause us to revise our view of Wynyard's relation to the Greenbaum firm. We have never questioned the fact that Wynyard had some attorney-client relationship with Greenbaum. What we have questioned is whether Wynyard's relation with Greenbaum and its subject matter were sufficiently coextensive with that of the trustee, other family members, and the family business to permit him access under the joint representation doctrine to every document generated by Greenbaum in the course of representing them. We are unable to conclude, as petitioner urges us to do, that just because Greenbaum represented the Weinberg family as a whole, every family member and business entity intended that their attorney-client communications be placed unconditionally at the disposal of every other family member and business entity. The joint representation doctrine which, when timely raised, has been applied to permit one client, over the objection of others, access to specifically identified materials generated during their com-

mon representation as to an identical subject matter, has never been applied in the manner advocated by petitioner.

Finally, in support of renewal, petitioner presents some 400 pages of documents voluntarily produced by the trustee. This material is offered to show either that the trustee waived her attorney-client privilege or that she was not ultimately prejudiced by the disclosure of the Greenbaum documents since, according to petitioner, the two sets of documents contain substantially the same information.

Once again, it must be pointed out that the "new" evidence to which our attention is directed is not timely presented. The last of the newly offered documents was produced to petitioner by February 8, 1986 when the trustee's suppression and disqualification motion was still pending before the Surrogate. If petitioner deemed these documents important to the vindication of his position, he should have at least attempted to include them in the record made in the motion court. He did not do so and their consideration at this point is, therefore, precluded. Further, insofar as petitioner adduces these documents in support of a waiver argument, their introduction at this stage is particularly inappropriate. Until now, no waiver argument has been raised by petitioner. It was in fact petitioner's position that the trustee had no privilege to waive. The remedy of renewal is not available "where [as here] a party has proceeded on one legal theory on the assumption that what has been submitted is sufficient, and thereafter sought to move again on a different legal argument merely because he was unsuccessful upon the original application." (*Foley v Roche, supra,* at 568.)

But even if petitioner's newly proffered evidence were proper for our consideration at this very late juncture, it would be hard to see how it supports the waiver and lack of prejudice claims advanced. Although there is some overlap between the new body of documents and those suppressed, the overlap is by no means complete; there remains a substantial disparity in both content and character between the two sets of documents.

As we are of the view that neither reargument nor renewal may be properly granted, we now consider petitioner's alternative request for leave to appeal pursuant to CPLR 5602 (b). Petitioner proposes the following issues for Court of Appeals review:

"1. The propriety of disqualifying counsel on the basis of

serious charges of unethical conduct without an evidentiary hearing;

"2. The extent to which the attorney-client privilege can be used to prevent one former client from obtaining documents prepared in the course of providing legal services for the mutual benefit of that client and another client on matters of common concern; and

"3. The circumstances in which a law firm that never represented an adverse party can be disqualified on the basis of its review of a finite number of privileged documents without weighing the prejudice to both parties."

Concerning the first of these issues, unless it is petitioner's position that this court was under a duty to remand this matter for an evidentiary hearing regardless of whether there existed any material factual issues, the issue has been waived since petitioner, for reasons best known to his counsel, has never made a request for, or been denied an evidentiary hearing prior to the appellate determination he would now have reviewed. We know of no rule requiring an evidentiary hearing in every case where disqualification may be imposed for attorney misconduct. What the cases do provide, and with good reason, is that where material factual issues remain respecting an attorney's conduct or the propriety of disqualification, an evidentiary hearing is in order *(see, Matter of Weitling,* 266 NY 184; *Matter of Long,* 287 NY 449; *see also, Elghanayan v Elghanayan,* 107 AD2d, at 594-595, *supra; Kaufman v Kaufman,* 63 AD2d, at 610, *supra; Poli v Gara,* 117 AD2d 786, 788). But where, as here, the record not only discloses no material issues of fact, but also points with compelling force to the conclusion that serious misconduct has occurred, we see no reason why an evidentiary hearing should be held. Petitioner, who, as noted, has never made a timely request for an evidentiary hearing and who it will be recalled conceded on appeal "There is no discrepancy in the record concerning the facts which are central to this appeal—the contents of the Greenbaum documents and the circumstances surrounding the production of those documents" is not now in a position to make a persuasive claim that there exists any need for a hearing. Nor has petitioner indicated any basis for the contention apparently underlying his motion for leave to appeal that, although no need for a hearing has been demonstrated, the law nevertheless requires that one be held. We see no bona fide legal issue to be reviewed.

The second issue which petitioner would commend to the attention of the Court of Appeals has never been properly presented by petitioner during the course of this litigation. As we have observed, petitioner has never timely raised the joint representation argument to support his acquisition of the Greenbaum files. His counsel have instead obtained the files by secret and improper means and then advanced the joint representation argument as if it would somehow render their conduct, and the ensuing disclosure, wholly benign. If the argument was to be used at all, it should have been raised at the outset before the disclosure occurred. There was no reason for either this court or the Surrogate to consider the argument, except as it had some limited relevance to the issue of the extent of the trustee's prejudice. We see no reason why the argument should receive further appellate attention, even as it bears on the question of prejudice. Its presentation by petitioner was manifestly meritless and found to be so by both this court and the Surrogate (see, at 203-205, 213-214, supra; see also, 129 AD2d, at 139-140, supra).

The last issue which petitioner would have addressed by the Court of Appeals presupposes something which is not true, namely, that we neglected to weigh the prejudice to both parties (see, at 206-209, supra; see, 129 AD2d, at 143-144, supra). It also presupposes that our decision to disqualify rested entirely on Sullivan & Cromwell's "review of a finite number of privileged documents". This, too, was not the case. As ought to have been clear, our disqualification determination rested upon a careful evaluation of Sullivan & Cromwell's entire course of conduct, including the improper manner in which the Greenbaum files were obtained and, then, not merely "reviewed", but used to prejudice the trustee. Although disqualification might indeed have been ordered based solely on Sullivan & Cromwell's review of these documents (see, Desbiens v Ford Motor Co., 81 AD2d 707, supra), it was here additionally warranted and, in fact, necessitated by the deliberate and sustained abuse with which we were confronted.

If this last issue were fairly posed with due regard for the actual facts of this case, we think it would be sufficiently evident that the sanction of disqualification was properly imposed and that further appellate consideration is unnecessary.

Having considered the petitioner's motion, we turn now to the motion of the trustee requesting that the appellate record be sealed. The motion should be granted to the extent of

sealing those portions of the record containing copies of the suppressed documents or citations therefrom. The remedy of suppression would be pointless if the material suppressed could nevertheless be obtained from the public record made as a result of the suppression proceeding. Moreover, having determined that the suppressed documents are immune from disclosure by reason of unwaived attorney-client privilege, there can be no question as to the necessity of our preventing further dissemination of the material by sealing the appellate record to the extent indicated.

KUPFERMAN, J. (dissenting in part). I would grant leave to appeal. Moreover, I cannot subscribe to the hyperbole in the court's memorandum. The Surrogate, who was fully familiar with the situation, imposed a sanction germane to the problem.

MURPHY, P. J., and MILONAS, J., concur in an opinion by MUPRHY, P. J., to which is appended an Addendum; KASSAL, J., concurs for the reasons stated in said Addendum; KUPFERMAN, J., dissents in part in an opinion and would grant leave to appeal.

Motion seeking sealing of record granted to the extent of directing the sealing of copies of suppressed documents or any part of their contents, and the motion for reargument, renewal or for leave to appeal to the Court of Appeals is denied with $20 costs to trustee Beiny.