In the Matter of ROTRAUT L.U. BEINY, as Trustee of the Trust Created for the Benefit of MARTIN WYNYARD and Others. ELISABETH N.F. WEINBERG, Grantor.

MARTIN WYNYARD, Respondent, v ROTRAUT L.U. BEINY, Appellant, and ANTIQUE COMPANY OF NEW YORK, Intervenor-Respondent.

First Department, November 29, 1990

234

**APPEARANCES OF COUNSEL**

*Laurence M. Shanahan* of counsel *(Lawrence M. Schwartz* with him on the brief; *Bower & Gardner,* attorneys), for respondent.

*John R. Horan* of counsel *(Carl L. DiStefano* and *Harold Ullman* with him on the brief; *Fox & Horan,* attorneys), for appellant.

*Melvyn Altman* for intervenor-respondent.

**OPINION OF THE COURT**

Per Curiam.

The underlying proceeding herein is for judicial settlement of an accounting of two trusts (the Wynyard trusts), of which petitioner is the beneficiary and respondent was, until June 1, 1989, a trustee, along with David Beiny, her husband, and John Sowray. These trusts own, respectively, 45% of the voting and nonvoting shares of intervening petitioner-respondent, The Antique Company of New York (ACNY), which is the owner of, and a dealer in, a very valuable collection of antique porcelains, antique furnishings and other works of art. The remaining shares of ACNY are owned by two trusts of which respondent is the sole beneficiary, and respondent is ACNY's sole active and chief operating officer. While it has been under respondent's control, a large number of ACNY's sales have been made through APC, Ltd. (APC), a London based company which is owned by a trust for the equal benefit of petitioner and respondent and of which respondent is the sole managing director. Among the claims against respondent in this action are allegations by petitioner that he has received no income from his beneficial ownership of shares of either of these companies. He alleges that respondent has caused APC to charge ACNY inflated commissions for sales of ACNY assets made through APC and has used APC's assets to pay for her own and her family's expenses, rather than distributing its earnings to its shareholders. During the course of the underlying proceeding in 1985 and 1986, Surrogate's Court issued orders restraining respondent from moving or disposing of the assets of ACNY as well as the assets of two trusts, known as the Densur and Porola trusts, of which respondent is the sole beneficiary (the Liechtenstein trusts). The court also ordered that respondent make arrangements for petitioner to inspect all the property and assets held by the Liechtenstein trusts or by their operating company, Internationale Finanz und Kunsthandel A.G. (IFK). The court-ordered discovery and the restraints imposed upon the Liechtenstein trusts were in response to petitioner's allegations that respondent had used these trusts to improperly dispose of assets belonging to ACNY. By the terms of the court orders, respondent was permitted to sell ACNY assets in the ordinary course of business as long as the sales were reported to petitioner and the proceeds deposited in a New York bank.

Respondent was also permitted to use ACNY funds to pay for ordinary and necessary business expenses.

In February 1987, petitioner moved to hold respondent in contempt, for, *inter alia,* allegedly transferring assets in violation of the court's orders. A hearing was held at which respondent appeared. During the course of the hearing, a temporary receiver was appointed over the assets of ACNY and its affiliates. Although the final date on which testimony was taken was March 30, 1987, the hearing was adjourned until June 19, 1989. The apparent reason for this substantial delay was intervening litigation involving other matters, including the disqualification of petitioner's counsel, during which time both parties retained new counsel. *(See generally, Matter of Weinberg,* 129 AD2d 126, *rearg denied* 132 AD2d 190, *lv dismissed sub nom. Matter of Beiny,* 71 NY2d 994.) When the hearing recommenced on June 19, 1989, respondent, who had left the country, failed to appear, and the court thereafter issued the order which is the subject of this appeal.

We find, after a review of the record, that respondent was afforded a full and fair hearing and that the evidence overwhelmingly supports the trial court's findings that respondent committed numerous and flagrant violations of its orders.

■ The remaining questions for this court's consideration concern the propriety of the punishments inflicted for those violations. Where a party is able to show that he or she has suffered an actual loss or injury as a result of a civil contempt, a fine may be imposed in an amount sufficient to indemnify the aggrieved party. (Judiciary Law §§ 753, 773.) While such amount need only have a "reasonable basis" of computation *(Matter of Rothko,* 43 NY2d 305), it is clear that the purpose of such a civil contempt fine is not deterrence or punishment but is, rather, the compensation or indemnification of the complainant. *(State of New York v Unique Ideas,* 44 NY2d 345.)

Here, the court properly fined respondent in the amount of $209,835, payable to ACNY, representing the 50% commissions paid by ACNY to APC on sales made during the period the orders were in effect. The court also properly fined respondent the amount of $252,998.83, payable to ACNY, for expenditures made by ACNY during the period the court's orders were in effect and which were not ordinary and necessary business expenses, including numerous expenditures for the living expenses of respondent and her family.

■ Moreover, the court was well within its discretion in ordering the return to New York of ACNY's assets *(see,* SCPA 2214), as well as requiring respondent to pay the costs necessitated by this transfer along with the costs associated with an action brought in England to appoint a receiver over those assets. The action brought in England and the transfer of the assets back to New York were directly due to respondent's violations of the court's orders. Similarly, respondent's behavior to the date of the hearing demonstrated that, if left in London, ACNY's assets were at risk of being dissipated. Thus, all of the costs associated with preventing such contingency must also be found to be directly related to respondent's violation of the court's orders. Accordingly, the court's imposition of the amount of these expenses upon respondent personally cannot be said to be punitive. Rather, it was designed to remedy the harm she had caused and was therefore appropriately assessed under Judiciary Law § 773. *(See, Moran v Village of Philmont,* 147 AD2d 230.)

■ In distinction, the record does not support the imposition of a fine upon respondent in the amount of $1,000,000 payable directly to petitioner for respondent's violation of the court's orders dated August 20, 1985, September 12, 1985, and November 6, 1986, restraining transfers of assets held by the Liechtenstein trusts. There is no question that respondent did indeed violate these orders, since the evidence shows that properties belonging to the trusts were moved from Zurich to Geneva and then to Liechtenstein, and that sums totaling approximately $1,021,000 were transferred from the accounts of the trusts to those of IFK. The evidence also demonstrates that respondent, though not the trustee, had such control over the handling of the trusts' assets that she may be held responsible for the violations of court orders which were clearly committed with her knowledge. *(Cf., Citibank v Anthony Lincoln-Mercury,* 86 AD2d 828.) There is no merit to respondent's argument that the evidence was insufficient to show that she violated the orders merely because petitioner allegedly failed to establish that her actions put these assets completely out of the control of the Liechtenstein trusts. Petitioner was required to show only that the transfers were made in violation of the court's orders, which they clearly were, and the Surrogate's finding that respondent was in contempt of the court's restraining orders is affirmed. With respect to the amount of the fine, however, petitioner did not demonstrate actual damages resulting from these transfers.

Petitioner's argument that he was damaged is based on his claim that respondent had previously transferred assets from ACNY to the Liechtenstein trusts. However, petitioner failed to definitively establish that either the properties which were moved or the money which was transferred from the Liechtenstein trusts were ACNY assets or derived from ACNY assets. Indeed, that is the crux of the litigation itself. At this point, petitioner has established that he was harmed only to the extent that the transfers have made it more difficult to ascertain whether ACNY assets were ever, in fact, improperly transferred to the Liechtenstein trusts. *(See, Yalkowsky v Yalkowsky, 93 AD2d 834.)*

The fact that petitioner was not at this stage able to adequately establish the provenance of the assets transferred from the Liechtenstein trusts, largely due to respondent's failure to comply with court-ordered discovery, does not mean that the court is without recourse to impose such other sanctions as are authorized by Judiciary Law § 773 and CPLR 3126.

In the absence of proof of other damages, a contemnor is liable, under Judiciary Law § 773, for a fine of $250 plus petitioner's costs and expenses. Notwithstanding the damages imposed for respondent's contemptuous violations of other provisions of the court's orders, petitioner should not be precluded from recovering the statutory fine plus costs for the totally separate violation of a different provision of the orders for which he cannot prove actual damages. This fine and the costs, which may include reasonable attorney's fees incurred by petitioner in bringing that portion of the contempt proceeding which related to the transfer of assets from the Liechtenstein trusts, may be made payable directly to petitioner.

CPLR 3126, additionally, provides that a party who refuses to obey a properly served order of disclosure may be sanctioned. Penalties which may be imposed, as the trial court deems appropriate, include prohibiting the disobedient party from introducing certain evidence, resolution of the issue to which the information is relevant against the party who has refused to disclose, or, the ultimate penalty of striking of pleadings.

Since we are vacating so much of the court's order as entered judgment in the amount of $1,000,000 for respondent's contempt in violating the restraining orders dated August 20, 1985, September 12, 1985 and November 6, 1986 insofar as

they related to the transfer of assets from the Liechtenstein trusts, the matter must be remanded to that court to impose such other sanction as is appropriate in accordance with the foregoing.

Accordingly, the order of the Surrogate's Court, New York County (Marie Lambert, S.), entered on or about August 1, 1989, which, *inter alia,* found respondent-appellant to be in contempt of court, directed payment of fines in the amount of $209,835 and $252,998.83 in favor of intervening petitioner-respondent and directed payment of a fine in the amount of $1,000,000 in favor of petitioner-respondent, should be modified, on the law and the facts, to vacate so much of the order as directed payment of a fine of $1,000,000, and to remand the matter to the Surrogate for the imposition of an appropriate sanction, and should be otherwise affirmed, with costs.

MURPHY, P. J., CARRO, ELLERIN, WALLACH and SMITH, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about August 1, 1989, modified, on the law and the facts, to vacate so much of the order as directed payment of a fine of $1,000,000, and to remand the matter to the Surrogate for the imposition of an appropriate sanction, and otherwise affirmed, with costs.