■ WILFREDO ROSADO, Individually and Derivatively as a Shareholder on Behalf of CASTILLO ROSADO, INC., et al., Appellants, v EDMUNDO CASTILLO INC. et al., Respondents, et al., Defendants. [50 NYS3d 42]—

Judgment, Supreme Court, New York County (Geoffrey D. Wright, J.), entered December 15, 2014, to the extent appealed from, dismissing the complaint against Edmundo Castillo (Mr. Castillo) and Edmundo Castillo Inc. (Castillo Inc.), unanimously affirmed, without costs. Order, same court and Justice, entered September 12, 2014, which, to the extent appealed from, denied plaintiff Wilfredo Rosado's motion for contempt against all defendants, dismissed the part of plaintiff's claims that is based on the market value of Castillo Rosado, Inc. (CRI), and sub silentio denied plaintiff's request for sanctions against defendant Denise Cassano, unanimously affirmed, without costs.

The court providently exercised its discretion in refusing to draw an adverse inference against defendants for failing to produce certain documents (*see Mathis v New York Health Club*, 288 AD2d 56, 57 [1st Dept 2001], *lv denied* 98 NY2d 610 [2002]). To the extent plaintiff seeks to raise spoliation and CPLR 3126 on his current appeal, these issues have twice been decided against him (*see Rosado v Edmundo Castillo Inc.*, 54 AD3d 278 [1st Dept 2008]).

Mr. Castillo and Castillo Inc.'s argument that plaintiff's claims are derivative, and he may not recover individually, is precluded by our most recent decision in this case (*see Rosado v Edmundo Castillo, Inc.*, 89 AD3d 544 [1st Dept 2011]).

The court providently exercised its discretion in declining to accept plaintiff's expert's valuation of CRI and its trademark (*see Matter of Endicott Johnson Corp. v Bade*, 37 NY2d 585,

588 [1975]). The valuation was in part based on CRI's sales, but the expert counted as "sales" all the deposits into CRI's bank account, without determining whether some of them were actually loans. Moreover, even plaintiff's expert concluded that plaintiff's "total ownership value" was "$2,155,747.65 *minus his share of corporate long-term debt*" (emphasis added) (*see Trotter v Lisman*, 209 NY 174, 180 [1913] ["(T)he assets of a corporation constitute a trust fund for the payment of its debts(,) and . . . its creditors have an equitable lien upon the same, superior to the right of the stockholders"]).

The court correctly dismissed plaintiff's contract claim against Mr. Castillo (*see Dorfman v American Student Assistance*, 104 AD3d 474 [1st Dept 2013]). Its conclusion that "[a]s to any agreement between [plaintiff] and [Mr.] Castillo, [plaintiff] effectively withdrew and abandoned the joint project, and thus before any activity alleged against [Mr.] Castillo, [plaintiff] had fractured the relationship" was reached under a fair interpretation of the evidence (*see Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]).

Plaintiff contends that the court should have awarded him $1,461,000 ($769,000 plus interest from January 2005) and punitive damages on his conversion claim. It should be noted that the court awarded him $759,823.40 ($406,973.58 plus interest from May 13, 2005, plus costs and disbursements) as against Cassano, defendant B&D Financial Strategies Inc., and defendant Beverly Whitaker d/b/a The Money Tree. Plaintiff is not entitled to additional relief. First, he does not argue that Castillo Inc. exerted any dominion over CRI's funds. Second, his claim that Mr. Castillo and Cassano converted $769,000 to their own use is not supported by the record, which shows that many of the payments made by Whitaker d/b/a Money Tree were for CRI's legitimate expenses, such as payments to companies that shipped its products.

While Mr. Castillo may have breached his fiduciary duty to CRI by establishing Castillo Inc. (*see Alexander & Alexander of N.Y. v Fritzen*, 147 AD2d 241, 246 [1st Dept 1989]), plaintiff did not prove that this caused him $2,155,747.65 in losses (*see Gibbs v Breed, Abbott & Morgan*, 271 AD2d 180, 189 [1st Dept 2000]).

The court providently exercised its discretion in denying plaintiff's contempt motion. Cassano's failure to produce Money Tree's books and records on one day's notice falls into the category of "honest mistake" (*Matter of Sentry Armored Courier Corp. v New York City Off-Track Betting Corp.*, 75 AD2d 344, 345 [1st Dept 1980] [internal quotation marks omitted]).

Moreover, plaintiff failed to show "actual loss or injury" from the delay in obtaining CRI's and Money Tree's books and records (*Matter of Beiny*, 164 AD2d 233, 236 [1st Dept 1990]). While it is true that he was harmed to the extent defendants improperly transferred CRI's assets, the court awarded him $759,823.40 as against Cassano, B&D, and Whitaker d/b/a Money Tree for these transfers.

The trial court providently exercised its discretion in sub silentio denying plaintiff's renewed motion for sanctions against Cassano. Given that the motion court (Charles E. Ramos, J.), denied plaintiff's original request for sanctions against Cassano and his motion to renew (*see Rosado*, 54 AD3d 278), and this Court affirmed both rulings (*see id.*), to grant sanctions at this stage would allow plaintiff to circumvent our affirmance of the denial of his renewal motion. The key piece of evidence showing that Cassano had forged the November 2004 letter was the 2006 document from American Funds, not her confession at the second trial. Concur—Sweeny, J.P., Renwick, Mazzarelli and Manzanet-Daniels, JJ.